UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA INTERNATIONAL UNION *et al.*, | : : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 09-1490 (RWR) |
| v. | : : | Re Document No.: | 2 |
| SERVICE EMPLOYEES INTERNATIONAL UNION *et al.*, | : : : : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

**I.  INTRODUCTION**

This matter is before the court on the plaintiffs' motion for a temporary restraining order ("TRO").  The plaintiffs, a labor union and its local affiliate (collectively, "the UGSOA"), represent employees who work for Hawk One Security, Inc. ("Hawk One") as security guards in D.C. government buildings and public schools.  The defendants, the Service Employees International Union and its local affiliate (collectively, "the SEIU"), are a competing labor union.  The UGSOA asserts that the SEIU is in breach of a contract that the two unions signed in 2002.  Accordingly, the UGSOA requests a TRO enjoining the SEIU from continuing to breach the contract.  Because the UGSOA has failed to demonstrate that it is likely to suffer irreparable injury if the court does not issue a TRO, the court denies the motion.

**II.  FACTUAL & PROCEDURAL BACKGROUND**

In 2002, the UGSOA and the SEIU executed an "anti-raid agreement" wherein each party

agreed refrain from attempting to organize employees who were already represented by the other party. Pls.' Mot., Ex. A. The agreement provided that any disputes arising under it "shall be submitted at the request of either party to a mutually agreeable arbitrator for binding arbitration." *Id.* The UGSOA asserts that the SEIU has been "raiding" the UGSOA's local affiliate since April 2009, and seeks an order enjoining the SEIU from continuing to do so.[1] The SEIU does not dispute that it has recently begun to solicit Hawk One employees, Defs.' Opp'n at 3-4, but maintains that it is allowed to do so because it exercised its option to voluntarily terminate the anti-raid agreement, *id.* at 4-5. The court turns now to the plaintiffs' request for a TRO.

### III. ANALYSIS

#### A. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary

---

[1] The motion for a TRO also sought an order requiring SEIU to submit the dispute to arbitration as the plaintiffs asserted the contract required. Pls.' Mot. at 1. But because the SEIU has since agreed to submit the dispute to arbitration, Defs.' Opp'n at 2, that portion of UGSOA's motion is now moot.

processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1986). Provided the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B.  The Plaintiffs Have Failed to Show Irreparable Injury

The Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.* ("NLGA") governs the issuance of injunctive relief in certain cases growing out of or involving labor disputes.  In general, the NLGA "expresses a basic policy against the injunction of activities of labor unions." *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 772 (1961).  The Supreme Court has carved out an exception to this principle, however, with respect to motions for injunctive relief to enforce an agreement to arbitrate a labor dispute: "when parties have agreed to arbitrate a dispute, a court may issue an injunction if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief." *Int'l Bhd. of Elec. Workers, Local 1900 v. Potomac Elec. Power Co.*, 634 F. Supp. 642, 643 (D.D.C. 1986) (citing *Boys Mkts., Inc. v. Retail Clerks Union*, 398 U.S. 235, 254 (1970)).  "[A]n injunction in aid of arbitration is appropriate . . . only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration." *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 372 F. Supp. 2d 83, 91 (D.D.C. 2005) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 285 (7th Cir.1981)).

Seizing on the aforementioned language, the UGSOA asserts that it is entitled to a TRO because the integrity of the arbitration process will be undermined absent injunctive relief.  Pls.' Mot. at 13-15; Pls.' Reply at 6-11.  The UGSOA further asserts that it will continue to suffer irreparable injury absent a TRO because the SEIU, by breaching the anti-raid agreement, is "undermin[ing] the UGSOA's representational capacity" and depriving the UGSOA of the competitive advantage that it is entitled to as Hawk One's authorized bargaining representative.  Pls.' Mot. at 13.

The SEIU opposes the UGSOA's motion, maintaining that the UGSOA has offered only speculation that it will suffer irreparable injury if the court does not issue a TRO. Defs.' Opp'n at 6-11. The SEIU also points out that, pursuant to a provision of the collective bargaining agreement currently in effect (the "contract bar" provision), the UGSOA is now and will continue to be Hawk One employees' sole bargaining representative until at least May 31, 2011, when the SEIU will be entitled to petition for a new representation election. *Id.* at 8-9. The UGSOA responds by asserting that, notwithstanding the contract bar provision, it faces irreparable injury in the form of a loss of competitive advantage. Pls.' Reply at 8. More specifically, UGSOA warns that its "ability to negotiate and service members during the period of the contract bar is critical to [its] ability to retain majority support when the contract bar ends and an employer or other union forces an election." *Id.* at 9.

Although the UGSOA's fear may be well-founded, it falls short of the imminence required for the court to grant the "extraordinary and drastic remedy" of a TRO. *Mazurek*, 520 U.S. at 972. "Injunctions . . . will not issue to prevent injuries neither extant nor presently threatened, but only merely 'feared.'" *Comm. in Solidarity With People of El Sal. (CISPES) v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991) (quoting *Exxon Corp. v. Fed. Trade Comm'n*, 589 F.2d 582, 594 (D.C. Cir. 1978)). The cases that UGSOA cites in support of its motion bolster the court's determination. In *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, for example, the court held that the plaintiff faced irreparable injury because "permitting the [arbitration] process to proceed in its normal course would result in the dispute being arbitrated only after [the plaintiff's] authority to [obtain its desired result] had already expired." 372 F. Supp. 2d at 91. Thus, the court concluded that the plaintiff faced irreparable injury

because prevailing in the arbitration proceeding would have been "but an empty victory." *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers*, 668 F.2d at 286)). Here, the UGSOA faces no such quandary. The anti-raid agreement directs that disputes arising under it be submitted to binding arbitration, *see* Pls.' Mot., Ex. A, and the plaintiff has offered no indication that an arbitration award could not redress any injury caused by the SEIU's alleged breach, *see generally* Pls.' Mot., Pls.' Reply. Accordingly, the court holds that the UGSOA has failed to carry its burden of demonstrating irreparable injury. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (observing that this Circuit "has set a high standard for irreparable injury," and that the movant must demonstrate that "[t]he injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm") (citations and quotations omitted).

If a party moving for injunctive relief fails to show irreparable injury, the court need not consider the remaining factors for issuance of a preliminary injunction. *CityFed*, 58 F.3d at 747 (stating that the movant's failure to show irreparable injury "is sufficient for [the court] to conclude that the district court did not abuse its discretion by rejecting [the movant's] request" such that the court was not required to reach the remaining factors relevant to the movant's entitlement to injunctive relief).

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for a TRO.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of August, 2009.

RICARDO M. URBINA
United States District Judge
